1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

PACIFIC LANDSCAPE MANAGEMENT, INC., a Washington corporation,

Plaintiff,

v.

PACIFIC LANDSCAPE MANAGEMENT, LLC, an Oregon limited liability company,

Defendant.

CASE NO. 2:23-cv-01005-JHC

ORDER DENYING MOTION FOR PARTIAL DISMISSAL

**I**

**INTRODUCTION**

This intellectual property matter comes before the Court on Defendant Pacific Landscape Management, LLC's (PLM-OR) Motion for Partial Dismissal.  Dkt. # 43.  Plaintiff Pacific Landscape Management, Inc. (PLM-WA) contends that PLM-OR expanded its landscaping business into the Puget Sound region in 2022, an area PLM-WA has operated in since 1994, and thereby caused substantial confusion in the marketplace.  Dkts. #48-2 at 2–3; # 50 at 1–18 ¶¶ 3–144; # 51 at 1 ¶ 3.  PLM-WA brings various claims against PLM-OR, including for trademark and trade name infringement under federal and state law.  Dkt. # 1.  PLM-OR requests partial

ORDER DENYING MOTION FOR PARTIAL DISMISSAL - 1

1
2
3
4

summary judgment, seeking dismissal of three of PLM-WA's claims. Dkt. # 43. The Court has

reviewed the materials filed in support of and in opposition to the motion, the record, and the

applicable law. The Court finds oral argument unnecessary. Being fully advised, for the reasons

below, the Court DENIES PLM-OR's motion.

5
6

## II
### BACKGROUND

7
8
9
10
11
12
13

Eric Mellin formed PLM-WA in November 1994. Dkt. # 51 at 1 ¶ 3. The company

provides landscaping products and services, "including residential, estate, and commercial

landscaping, design, construction, management, maintenance, and related services." *Id.* at 1 ¶ 4.

PLM-WA operates in "western Washington, including King, Pierce, Snohomish, Thurston,

Skagit, Island, Kitsap, Whatcom, Kittitas, and Chelan counties" (the Puget Sound region). *Id.* at

1–2 ¶ 5. Since its formation, the company has been using the names "Pacific Landscape

Management" and "PLM" in the Puget Sound region. *Id.*

14
15
16
17
18
19
20
21
22
23
24

PLM-OR began using the name "Pacific Landscape Management" for its landscaping

business in Oregon around March 2001. Dkt. # 45 at 1 ¶ 3. Sometime in late 2001 or 2002,

PLM-OR expanded its operations into southwest Washington. *Id.* at 1 ¶4; Dkt. # 51 at 2 ¶ 6. In

2002, Mellin read an article in a landscape trade magazine about PLM-OR's expansion into

Washington. Dkt. # 51 at 2 ¶ 6. That same year, Mellin hired the law firm of Foster Pepper,

who sent PLM-OR a letter requesting that it cease using the name "Pacific Landscape

Management." Dkts. # 45 at 2 ¶ 5; # 45-1 at 2–3; # 51 at 2 ¶ 6. Bob Grover, the president of

PLM-OR recalls having a phone call with someone affiliated with PLM-WA to discuss the

cease-and-desist letter. Dkt. # 45 at 2 ¶ 6. Mellin states, as summarized in a follow-up letter

Foster Pepper sent to PLM-OR, that during the phone call, PLM-OR represented that it was an

ORDER DENYING MOTION FOR PARTIAL
DISMISSAL - 2

Oregon company doing business primarily in Hillsboro, Oregon.  Dkts. # 45-1 at 4–5; # 51 at 2 ¶ 7.  PLM-OR said that it performed some work in Washington for clients who have properties in Vancouver, Washington.  Dkts. # 45-1 at 4; # 51 at 2 ¶ 7.  But PLM-OR did not maintain an office in Washington, did not advertise in Washington, and was registered as a foreign company authorized to do business in Washington because of its work in Vancouver.  Dkts. # 45-1 at 4; # 51 at 2 ¶ 7.  PLM-WA has never operated in Vancouver or Clark County, Washington.  Dkt. # 51 at 2 ¶ 8.  The parties dispute whether any resolution was reached at this point in time.  *See* Dkts. # 45 at 2 ¶ 7 (Grover states that "[n]o agreement was reached between the parties regarding this dispute"); # 51 at 2 ¶ 9 (Mellin recalls that "the discussion culminated in a written consent agreement where the parties agreed [PLM-OR] could operate in the Vancouver, Washington area under the name Pacific Landscape Management, but would not compete beyond the region").

About twenty years later, in the summer of 2022, PLM-OR acquired two companies in the Puget Sound region that had been providing landscaping services.  Dkts. # 45 at 2 ¶ 12; # 46 at 1 ¶ 3.  PLM-OR also approached Mellin about purchasing PLM-WA, but the parties did not reach an agreement.  Dkts. # 45 at 2 ¶ 13; # 51 at 2 ¶ 11.  In September 2022, counsel for PLM-WA sent PLM-OR a cease-and-desist letter, contending that PLM-WA had common law trademark rights to the name "Pacific Landscape Management" in the Puget Sound region.  Dkt. # 46-1 at 2–3.  From 2022 to 2023, counsel for the parties communicated about a potential resolution.  Dkts. # 46-2 at 2–10; # 48-3 at 2–12.  In October 2022, counsel for the parties began communicating about a potential settlement.  Dkt. # 48-3 at 12.  On November 3, 2022, counsel for PLM-WA stated that if PLM-OR was "willing to use 'Pacific Landscape *Maintenance*' in Puget Sound, which they offered a couple weeks ago, that seem[ed] like a workable solution for the parties."  *Id.* at 11 (emphasis added).  Over the next several months, they continued settlement discussions.  *See generally* Dkt. # 48-3.

On December 19, 2022, PLM-OR's counsel represented that, while PLM-OR could not "fully disassociate between Pacific Landscape Management and Pacific Landscape Maintenance," it would be clearer "in the Puget Sound area [that PLM-OR is] operating as Pacific Landscape Maintenance." Dkt. # 48-3 at 8–9. PLM-OR's counsel said that the company had been operating in Oregon for decades and did "not want it to appear as though they just started their landscaping business here in Washington." *Id.* at 9. PLM-WA's counsel replied that if PLM-OR could change its invoice header to match the proposed signature block, then the parties "ha[d] a deal." *Id.* at 7. That same day, PLM-OR's counsel offered to draft a settlement agreement. *Id.* A month later, PLM-WA's counsel reached out to PLM-OR's counsel asking about the status of the draft. *Id.* at 5–6. PLM-OR's counsel responded that they would be sending over the draft agreement in a few days. *Id.* at 5. On January 25, 2023, PLM-OR's counsel provided PLM-WA's counsel with the draft. *Id.* at 4–5. On February 27, 2023, PLM-WA's counsel informed PLM-OR's counsel that "**due to the continued confusion of our marks in the area, [PLM-WA] ha[s] made several edits to the settlement agreement. Please review and we can discuss.**" *Id.* at 3 (emphasis in original). On April 4, 2023, PLM-OR's counsel replied that PLM-OR would not "sign [] a confession of judgment. Please find the revised draft of the settlement agreement." *Id.* at 2–3. About three months later, PLM-WA sued PLM-OR. *See* Dkt. # 1.

PLM-OR moves for summary judgment on three of PLM-WA's claims. Dkt. # 43. It moves to dismiss PLM-WA's claims for trade name infringement under Washington law, unfair competition and false designation of origin under the Lanham Act, 15 U.S.C. Section 1125(a), and violations of the Washington Consumer Protection Act (CPA), RCW 19.86.10 *et seq*. *Id.* at 4. PLM-OR says that (1) Washington's statute of limitations bars the common-law claim for trade name infringement; (2) the Lanham Act claim fails because PLM-OR never made

trademark use of the "MANAGEMENT" name in the Puget Sound region; and (3) the doctrine of equitable estoppel bars the claims related to PLM-OR's use of the "MAINTENANCE" name.[1] *See generally* Dkt. # 43.

### III

### DISCUSSION

Summary judgment is warranted if the evidence, viewed in the light most favorable to the non-moving party, shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A fact is "material" if it might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A factual dispute is "'genuine' only if there is sufficient evidence for a reasonable fact finder to find for the non-moving party." *Far Out Prods., Inc. v. Oskar*, 247 F.3d 986, 992 (9th Cir. 2001) (citing *Anderson*, 477 U.S. at 248–49).

The moving party bears the initial burden of showing there is no genuine dispute of material fact and that it is entitled to prevail as a matter of law. *Celotex*, 477 U.S. at 323. To

---

[1] PLM-OR also raises issues under what it terms PLM-WA's "original position." *See generally* Dkt. # 43. It says that PLM-WA's "original position" was based on communications between the parties in 2002 in which PLM-WA purportedly took the position "that it had enforceable common law trademark rights to the MANAGEMENT Name in Clark County." Dkt. # 43 at 10. In response, PLM-WA says that its position "has never changed," and PLM-WA has common law trademark and trade name rights in the Puget Sound region, and *not* in Clark County. Dkt. # 47 at 4. Based on PLM-WA's statements, PLM-OR provided "no further discussion" about the "original position" in its reply brief. *See generally* Dkt. # 52. Thus, the Court need not address the "original position."

PLM-OR also contends the parties did not reach an agreement in 2002 concerning PLM-OR's use of the "MANAGEMENT" name. Dkt. # 43 at 10. In the alternative, PLM-OR says that, even if the parties reached an agreement in 2002, the agreement is (1) void for violating the statute of frauds; (2) a naked license that extinguishes PLM-WA's rights to the "MANAGEMENT" name; and/or (3) unenforceable for lack of consideration. *Id.* at 10–13. PLM-WA responds that it is not raising a breach of contract claim and that "no party has alleged, much less established a license agreement." Dkt. # 47 at 30. Because none of PLM-WA's claims rise or fall on the purported existence (or non-existence) of an agreement between the parties, the Court need not address this issue. *See generally* Dkt. # 1.

ORDER DENYING MOTION FOR PARTIAL
DISMISSAL - 5

carry its burden, "the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). If the moving party meets its burden of production, the burden shifts to the nonmoving party to identify specific facts from which a factfinder could reasonably find in the nonmoving party's favor. *Celotex*, 477 U.S. at 324; *Anderson*, 477 U.S. at 250.

A.      Timeliness of Trade Name Infringement Claim

Under Washington law, the limitations period for trade name infringement claims is three years. *See* RCW § 4.16.080(2); *see also Eat Right Foods, Ltd. v. Whole Foods Mkt., Inc.*, No. C13-2174 RSM, 2018 WL 2387638, at *3 (W.D. Wash. May 25, 2018), *aff'd*, 779 F. App'x 471 (9th Cir. 2019) (stating that Washington has a three-year limitations period for trade name infringement claims).

PLM-OR contends that the limitations period on the trade name claim began to run in 2002 and PLM-WA waited more than 20 years to file its lawsuit. Dkt. # 43 at 13–14. PLM-OR says that trade name infringement claims under Washington law, unlike infringement claims under the Lanham Act, lack "geographic enforceability limitations," and that PLM-WA's claim for trade name infringement arose in 2002 when PLM-WA first learned that PLM-OR was performing work in Vancouver, WA. *Id.* at 15 (stating that "trademark enforcement rights may have geographic limitations as to the area of enforceability" under the Lanham Act) (citing *Brookfield Commc'ns, Inc. v. W. Coast Ent. Corp.*, 174 F.3d 1036, 1054 (9th Cir. 1999))). PLM-OR relies on the text of RCW Section 19.80.010, which requires people doing business in Washington under a trade name to register that trade name so that the state maintains a "central registry." *Id.* (quoting RCW § 19.80.001). According to PLM-OR, this means that trade name

rights apply "equally" throughout the state.  *Id.*  PLM-OR contends that the text of Washington's CPA, RCW 19.86.010 to 19.86.920, also supports its proposition.  *Id.*  It says that the CPA applies to "the people of the ***state*** of Washington" and "does not delineate between geographic areas." (emphasis in original) (quoting §§ 19.86.010(2), 19.86.020).  *Id.*

PLM-WA counters that its trade name claim arose in 2022, when PLM-OR began operating in the Puget Sound region.  Dkt. # 47 at 24.  It says that an "owner of a common law trademark only has rights where it used its mark."  *Id.* at 8 (citing J. Thomas McCarthy, 4 McCarthy on Trademarks and Unfair Competition § 26:2 (5th ed. Sept. 2024); *Hanover Star Milling Co. v. Metcalf*, 240 U.S. 403, 415–16 (1916)).  PLM-WA asserts that its common law trade name and trademark rights are regional and limited to the Puget Sound region—the area it has operated in since 1994.  *Id.* at 8, 24.  The company states that trade name infringement claims "arise when the senior user knew or should have known that the junior user has begun to use a name or mark in the senior user's territory in a manner that is likely to cause confusion."  *Id.* at 8 (citing *Brookfield Commc'ns, Inc.*, 174 F.3d at 1047).

PLM-OR does not cite, nor has the Court identified, any applicable legal authority to support its contention that common law trade name actions in Washington lack geographic limitations within the state.[2]  And indeed, Washington courts have acknowledged geographical limitations in the context of providing injunctive relief in trademark disputes.  For example, in *Pioneer First Fed. Sav. & Loan Ass'n v. Pioneer Nat. Bank*, 98 Wash. 2d 853, 862, 659 P.2d 481, 487 (1983), the Washington Supreme Court stated that "[u]nder our trademark laws, it is fundamental that the protection to which a party is entitled is limited to the extent of competition in a given market area."  *Id.* at 862.  The court, in upholding the appellate court's reversal of

---

[2] PLM-OR also cites no authority, and the Court has found none, analyzing either RCW 19.80.010 or the CPA in the context of geographic limitations of common law trade name claims.

injunctive relief that would prohibit a national bank from using the word "Pioneer" in its name, reasoned that the "parties d[id] not compete in the same market area." *Id.* The court also stated that the "remote possibility of future competition or the very incidental business" by the federal loan and saving association in the bank's region did not justify injunctive relief. *Id.*; *see also Outfitting Co. v. Manheim*, 59 Wash. 428, 433, 110 P. 23, 24 (1910) (upholding the lower court's enjoining the appellant from using the trade name "Eastern Outfitting Company" in Spokane because the appellee "did not invade the appellant's territory" in Seattle and "[b]efore the appellant attempted to open a business in Spokane, there had been no confusion and no deception practiced upon the public or the appellant's customers").

PLM-OR's contention that the limitations period began running in 2002 is based on the 2002 cease-and-desist letter. Dkt. # 45-1 at 2–3. But the parties had a phone call in which PLM-OR represented that it was based in Oregon, did not maintain an office in Washington, did not advertise in Washington, and only sometimes performed work for clients who owned properties in Vancouver, Washington. Dkts. #45-1 at 4–5; # 51 at 2 ¶ 7. PLM-WA operates in the Puget Sound region and has never performed any services in Vancouver or Clark County. Dkt. # 51 at 1–2 ¶¶ 5, 8, 11. In 2022, PLM-OR expanded into the Puget Sound region, an area PLM-WA had served since 1994, and began offering its landscaping services. Dkts. # 46 at 1–2 ¶¶ 3–5; # 51 at 1–2 ¶¶ 5, 11–12. Around a year after PLM-OR's expansion, PLM-WA sued PLM-OR alleging, among other things, common law trade name infringement. *See* Dkt. #1; *see also* RCW § 4.16.080(2) (three-year statute of limitations for trade name infringement claims).[3]

---

[3] PLM-OR also argues that Washington's statute of limitations for trade name claims also bars PLM-WA's CPA claim. Dkt. # 52 at 6. PLM-OR says that "[g]iven that [PLM-WA's] CPA claim is premised upon [PLM-WA's] trade name claim, the CPA claim was also ripe in 2002." *Id.* For the same reasons discussed above, Washington's statute of limitations does not bar PLM-WA's CPA claim.

1

2

Thus, viewing the evidence in the light most favorable to PLM-WA, the statute of limitations does not bar the trade name infringement claim.

3

B.    Lanham Act Claim

4

PLM-WA claims PLM-OR violated the Lanham Act, 15 U.S.C. § 1125(a).  *See* Dkt. # 1

5

at 10–11.  It alleges false designation of origin and unfair competition.  *Id.*

6

To succeed on a false designation of origin claim under the Lanham Act, a plaintiff must

7

show that

8

9

10

11

(1) [the] defendant uses a designation (any word, term, name, device, or any combination thereof) or false designation of origin; (2) the use was in interstate commerce; (3) the use was in connection with goods or services; (4) the designation or false designation is likely to cause confusion, mistake, or deception as to (a) the affiliation, connection, or association of [the] defendant with another person, or (b) as to the origin, sponsorship, or approval of [the] defendant's goods, services, or commercial activities by another person; and (5) [the] plaintiff has been or is likely to be damaged by these acts.

12

13

*Obesity Rsch. Inst., LLC v. Fiber Rsch. Int'l, LLC*, 165 F. Supp. 3d 937, 949 (S.D. Cal. 2016)

14

(quoting *Summit Tech., Inc. v. High–Line Med. Instruments, Co.*, 933 F. Supp. 918, 928 (C.D.

15

Cal. 1996)).  As to claims of unfair competition, courts have reasoned that "there is no material

16

difference in the law governing relief based upon trademark infringement and unfair competition

17

under the Lanham Act."  *Blumenthal Distrib., Inc. v. Comoch Inc.*, 652 F. Supp. 3d 1117, 1128

18

(C.D. Cal. 2023) (internal citations omitted); *see also Walter v. Mattel, Inc.*, 210 F.3d 1108, 1111

19

(9th Cir. 2000) ("The test for false designation under the Lanham Act, as well as the common-

20

law and statutory unfair competition claims, is whether there was a 'likelihood of confusion.'")

21

(internal citation omitted) *holding modified on other grounds by Surfvivor Media, Inc. v.

22

Survivor Prods.*, 406 F.3d 625 (9th Cir. 2005).  "A claim of trademark infringement under §

23

1114(1)(a) of the Lanham Act requires a trademark holder to demonstrate: (1) ownership of a

24

valid mark (i.e., a protectable interest), and (2) that the alleged infringer's use of the mark is

ORDER DENYING MOTION FOR PARTIAL
DISMISSAL - 9

likely to cause confusion, or to cause mistake, or to deceive consumers." *Reno Air Racing Ass'n, Inc. v. McCord*, 452 F.3d 1126, 1134 (9th Cir. 2006) (quoting *KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*, 408 F.3d 596, 602 (9th Cir. 2005)).

False designation of origin and unfair competition claims under the Lanham Act require a plaintiff to show a likelihood of confusion. Summary judgment is not appropriate "when a jury could reasonably conclude that there is a likelihood of confusion." *KP Permanent Make-Up, Inc.*, 408 F.3d at 608 (citing *Downing v. Abercrombie & Fitch*, 265 F.3d 994, 1008 (9th Cir. 2001)). An eight-factor test, known as the *Sleekcraft* factors, "guides the assessment of whether a 'likelihood of confusion exists.'" *Reno Air Racing Ass'n, Inc.*, 452 F.3d at 1135–36 (citing *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348–49 (9th Cir. 1979)). These factors include

> 1) the strength of the mark; 2) proximity or relatedness of the goods; 3) the similarity of the marks; 4) evidence of actual confusion; 5) the marketing channels used; 6) the degree of care customers are likely to exercise in purchasing the goods; 7) the defendant's intent in selecting the mark; and 8) the likelihood of expansion into other markets.

*KP Permanent Make-Up, Inc.*, 408 F.3d at 608 (citing *Sleekcraft Boats*, 599 F.2d at 348–49). The list of *Sleekcraft* factors "is neither exhaustive nor exclusive. . .[r]ather, the factors are intended to guide the court in assessing the basic question of likelihood of confusion." *E & J Gallo Winery v. Gallo Cattle Co.*, 967 F.2d 1280, 1290 (9th Cir. 1992). "Nonconsumer confusion may also be relevant to the 'likelihood of confusion' inquiry." *Kythera Biopharmaceuticals, Inc. v. Lithera, Inc.*, 998 F. Supp. 2d 890, 901 (C.D. Cal. 2014) (citing *Rearden LLC v. Rearden Com., Inc.*, 683 F.3d 1190, 1214 (9th Cir. 2012)). It is relevant "where there is confusion on the part of: (1) potential consumers; (2) non-consumers whose confusion could create an inference that consumers are likely to be confused; and (3) non-consumers whose confusion could influence consumers." *Id.* (quoting *Rearden LLC*, 683 F.3d at 1214).

ORDER DENYING MOTION FOR PARTIAL
DISMISSAL - 10

PLM-OR says that if PLM-WA "did not have rights in Clark County in 2002, then [PLM-WA] has rights only in the Puget Sound Area—the geographic area in which it conducts business." Dkt. # 43 at 19. Thus, PLM-OR contends that the Lanham Act claim fails because it used only the name "PACIFIC LANDSCAPE MAINTENANCE" in the Puget Sound region and has never made trademark use of the "MANAGEMENT" name. *Id.* at 15, 19.

PLM-WA responds that the standard for trademark infringement is "not whether the defendant's mark is 'identical' to the plaintiff's mark; it's whether the defendant's trademark causes a 'likelihood of confusion.'" Dkt. # 47 at 19 (quoting *Jada Toys, Inc. v. Mattel, Inc.*, 518 F.3d 628, 632 (9th Cir. 2008)). It also says that PLM-OR did not use only the "MAINTENANCE" name in the Puget Sound region; but even if it did, PLM-OR cannot establish as a matter of law that its use is unlikely to cause confusion. *Id.* at 18–19. PLM-WA contends that "PACIFIC LANDSCAPE MAINTENANCE is almost identical to PACIFIC LANDSCAPE MANAGEMENT and the marks are used with identical landscaping services." *Id.* at 19. It argues that PLM-OR cannot establish "that its use is unlikely to cause confusion as a matter of law," "especially when it did not address the *Sleekcraft* factors that govern likelihood of confusion." *Id.*

A genuine issue of material fact exists as to whether PLM-OR's conduct was likely to cause confusion in the marketplace. First, although PLM-OR contends that it used only the "MAINTENANCE" name in the Puget Sound region, PLM-WA has provided evidence that PLM-OR was also using the "MANAGEMENT" name in the Puget Sound region. *See* Dkt. # 49–1 at 2–9, 13–16, 19–28. For example, PLM-OR's website uses the title "PACIFIC LANDSCAPE MANAGEMENT," in connection with its branches in the Puget Sound region and it also uses the "MANAGEMENT" title when posting on LinkedIn about job openings in its offices in the Puget Sound region. *Id.* at 13–16, 19–28. On PLM-OR's website, under the

ORDER DENYING MOTION FOR PARTIAL
DISMISSAL - 11

"Branches" page, it says, "Our eight branches allow us to cover a lot of ground through the Northwest Oregon and Southwest Washington region." *Id.* at 14.[4]  The website includes information about the Mukilteo branch, which "serves the north Puget Sound region" and the Tacoma branch, "which serves the south Puget Sound region." *Id.* at 4–5.  The website does not mention or use the "MAINTENANCE" name. *Id.*  PLM-OR also posted on LinkedIn about job openings in the company for a "landscape designer/assistant estimator" and "branch administrator" in the Seattle area; the job postings do not reference the "MAINTENANCE" name. *Id.* at 23–26.[5]  Thus, at least in some respects, both parties were using identical marks in the same region for their landscaping businesses.

Further, Tom Fox, PLM-WA's Chief Financial Officer, states that since the summer of 2022, PLM-WA has "experienced repeated and ongoing instances of confusion" of PLM-WA with PLM-OR (and vice versa), among "customers, potential customers, vendors and community members." *See* Dkt. # 50 at 1, 10, 12, 14, 17 ¶¶ 3, 76–77, 91, 93, 114, 141.  For instance, one of PLM-WA's customers mistakenly paid PLM-OR for work that PLM-WA had performed.  *Id.* at 12 ¶ 93.  And another of PLM-WA's customer who also inadvertently paid PLM-OR instead of PLM-WA, said, "When I search for Pacific Landscape Management, I had no idea there were two with the exact same name both with a presence in Washington."  *Id.* at 17 ¶ 141.  Potential customers have also mistakenly called PLM-WA trying to reach PLM-OR about landscaping work.  *See id.* at 14–16 ¶¶ 114, 119, 127.

---

[4] Payton Tompkins, counsel for PLM-WA, states that PLM-OR's website information was obtained using the Internet Archive Wayback Machine to March 2023. *See* Dkt. # 49 at 2 (Declaration of Payton C. Tompkins).

[5] PLM-OR also posted job openings on Indeed.com for positions in the Puget Sound region and used the "PACIFIC LANDSCAPE MANAGEMENT" name.  *See* Dkt. # 49-1 at 30–34.

ORDER DENYING MOTION FOR PARTIAL
DISMISSAL - 12

PLM-OR relies on *Delta Forensic Engineering, Inc. v. Delta V Biomechanics, Inc.*, 402 F. Supp. 3d 902 (C.D. Cal. 2019) to support its argument that PLM-WA's evidence of actual confusion "is merely evidence of careless." Dkt. # 52 at 11. But the case is distinguishable. There, the court, in analyzing likelihood of confusion under the *Sleekcraft* factors, reasoned that the most significant factor in that case was "the type of services and degree of care factor" because both parties offered "expensive expert witness services to attorneys." 402 F. Supp. 3d at 907. The court reasoned that the likelihood of confusion appeared remote given the "sophistication of the consumer, expense of the services, and the fact that [the] [d]efendant is, in effect, a single individual[.]" *Id.* at 908.

PLM-OR also cites *Credit One Corporation v. Credit One Financial, Inc.*, 661 F. Supp. 2d 1134, 1139 (C.D. Cal. 2009), to support its contention that "misdirected communications" are not evidence of trademark confusion. There, the court, in considering the plaintiff's motion for a *preliminary injunction*, reasoned that the "few examples" the plaintiff provided of "actual confusion," including "telephone calls and Western Union payments apparently intended for [the] [d]efendants," were better characterized as "misdirected communications." 661 F. Supp. 2d at 1139. But evidence of actual confusion is only one of the *Sleekcraft* factors that guides a court's analysis. And the Ninth Circuit has said that "[p]roving actual confusion is difficult" and "[b]ecause of the difficulty in garnering such evidence, the failure to prove instances of actual confusion is not dispositive." *Sleekcraft Boats*, 599 F.2d at 352–53; *see also Playboy Enters., Inc. v. Netscape Commc'ns Corp*., 354 F.3d 1020, 1026 n.27 (9th Cir. 2004) ("Evidence of actual confusion constitutes persuasive proof that future confusion is likely . . . If enough people have been actually confused, then a likelihood that people are confused is established.") (internal quotation and citation omitted). Thus, although PLM-OR says that PLM-WA's evidence of actual confusion only shows "mere carelessness and clerical errors," Dkt. # 52 at 10, the

"likelihood of confusion is often a fact-intensive inquiry," that is generally inapt at the summary judgment stage.  *Rearden LLC*, 683 F.3d at 1210 (quoting *Au–Tomotive Gold, Inc. v. Volkswagen of Am., Inc.*, 457 F.3d 1062, 1075 (9th Cir. 2006), *cert. denied*, 549 U.S. 1282 (2007)); *JL Beverage Co., LLC v. Jim Beam Brands Co.*, 828 F.3d 1098, 1105 (9th Cir. 2016) (stating that because the likelihood of confusion "is based on a non-exhaustive, multi-factor, fact-intensive inquiry, [the Ninth Circuit has] cautioned against granting summary judgment in these cases.").

Viewing the evidence in the light most favorable to PLM-WA, there is an issue of fact as to likelihood of confusion.

C.    Equitable Estoppel

PLM-OR contends that the doctrine of equitable estoppel bars PLM-WA from asserting that PLM-OR's use of the "MAINTENANCE" name in the Puget Sound area constitutes infringement.  Dkt. # 43 at 20–21.  To support this contention, PLM-OR says that it adopted the name in the Puget Sound area because PLM-WA told PLM-OR that it could do so.  *Id.* (internal citations omitted).  PLM-OR says that it had a reasonable belief that PLM-WA would not sue over its use of the "MAINTENANCE" name.  *Id.* (internal citations omitted).  PLM-OR says that it reasonably relied on PLM-WA's representations to its detriment and spent over $300,000 adopting the "MAINTENANCE" name in the Puget Sound area.  *Id.*

PLM-WA counters that PLM-OR, among other things, (1) publicly implemented its branding plan before providing PLM-WA with a draft settlement agreement; (2) the draft settlement agreement "revoked the core terms it previously offered"; and (3) PLM-OR "continued to implement its branding plan despite the parties' failure to reach terms."  Dkt. # 47 at 27 (internal citations omitted).  PLM-WA says that PLM-OR knew that the parties had not reach an agreement when it announced the "MAINTENANCE" name internally and publicly.

*Id.* at 28.  It also says that while PLM-WA has been prevented from conducting discovery into PLM-OR's actual branding, "the evidence is overwhelming that [PLM-OR's] actual practice continues to cause substantial confusion in the marketplace."  *Id.*

PLM-OR does not say whether it is asserting equitable estoppel as to PLM-WA's federal claims, state-law claims, or both.  But regardless of the law that applies, the result is the same: there are genuine disputes of material fact precluding summary judgment.

Under Washington law, a party asserting equitable estoppel must show "(1) an admission, statement, or act inconsistent with the claim afterwards asserted, (2) action by the other party on the faith of such admission, statement, or act, and (3) injury to such other party resulting from allowing the first party to contradict or repudiate such admission, statement, or act."  *Saunders v. Lloyd's of London*, 113 Wash. 2d 330, 340, 779 P.2d 249, 255 (1989) (quoting *McDaniels v. Carlson*, 108 Wash. 2d 299, 738 P.2d 254 (1987)).  "Estoppel focuses on the justified reliance of the person asserting it."  *Donelson v. Providence Health & Servs.-Wash.*, 823 F. Supp. 2d 1179, 1184 (E.D. Wash. 2011) (quoting *Farnam v. CRISTA Ministries*, 116 Wash.2d 659, 679, 807 P.2d 830 (1991).  "Justifiable reliance is defined by Washington courts as reliance that was 'reasonable under the circumstances.'"  *Id.* (quoting *ESCA Corp. v. KPMG Peat Marwick*, 135 Wash.2d 820, 828, 959 P.2d 651 (1998)).  Further, Washington "[c]ourts disfavor equitable estoppel, so a party claiming estoppel must prove its elements by clear, cogent, and convincing evidence."  *Shelcon Const. Grp., LLC v. Haymond*, 187 Wash. App. 878, 902, 351 P.3d 895, 907 (2015) (citing *Nickell v. Southview Homeowners Ass'n*, 167 Wash. App. 42, 54, 271 P.3d 973 (2012)).  "Equitable estoppel is a question for the trier of fact, unless only one reasonable inference can be drawn from the evidence."  *Id.*

As summarized in the Background section of this Order, *see supra* Sec. II, the parties communicated over the course of several months about a potential settlement agreement.  Dkt.

ORDER DENYING MOTION FOR PARTIAL
DISMISSAL - 15

# 48-3.  During those discussions, PLM-WA's counsel stated that if PLM-OR was "willing to use 'Pacific Landscape Maintenance' in Puget Sound, which they offered a couple weeks ago, that seem[ed] like a workable solution for the parties." *Id.* at 11.  In December 2022, PLM-WA's counsel stated the parties "ha[d] a deal" if PLM-OR made certain changes to its invoice header and signature block. *Id.* at 7.  Over the next several months, the parties exchanged drafts of the settlement agreement without reaching a resolution. *Id.* at 2–6.

PLM-OR has not established that its reliance was reasonable as a matter of law under the circumstances.  It asserts that it reasonably relied on PLM-WA's conduct to its detriment because PLM-WA said, "'If [PLM-OR] is willing to use Pacific Landscape Maintenance in Puget Sound . . . that seems like a workable solution for the parties.'" Dkt. # 52 at 7 (quoting Dkt. # 48-3 at 11).  But later communications between the parties' counsel show that they were still negotiating the scope of PLM-WA's use of the "MAINTENANCE" name in the Puget Sound region.  *See* Dkt. # 48-3 at 9.  For example, PLM-WA's counsel asked whether PLM-OR would agree to use the "MAINTENANCE" name without any reference to "PACIFIC LANDSCAPE MANAGEMENT." *Id.* (PLM-WA's counsel asked PLM-OR's counsel if its client would "agree in the Puget Sound area to only use Pacific Landscape Maintenance and not any tag line or other language that says Pacific Landscape Management? So, what we are concerned about is 'Pacific Landscape Maintenance, a division of Pacific Landscape Management.'").

Further, the same day that PLM-WA's counsel told PLM-OR's counsel "we have a deal," PLM-OR's counsel offered to draft the settlement agreement.  Dkt. # 48-3 at 7.  In the following months, the parties continued to revise the settlement agreement without reaching a resolution. Dkt. # 48-3.  PLM-OR does not specify when it began adopting the "MAINTENANCE" name in the Puget Sound region or say what actions it took in adopting the name, but it did so while its

ORDER DENYING MOTION FOR PARTIAL
DISMISSAL - 16

counsel was still in discussions with PLM-WA's counsel and revising the settlement agreement.

Whether PLM-OR's reliance was reasonable under these circumstances is a question of fact. *See*

*Colonial Imports, Inc. v. Carlton Nw., Inc.*, 121 Wash. 2d 726, 735, 853 P.2d 913, 918 (1993)

("No party ought to be precluded from making out his case according to its truth . . . [h]ence, the

doctrine of [equitable estoppel] must be applied strictly, and should not be enforced unless

substantiated in every particular.") (alterations in original) (internal quotation and citation

omitted).

Federal law compels the same result. The Ninth Circuit describes equitable estoppel as

"adjusting the relative rights of parties based upon consideration of justice and good conscience."

*United States v. Georgia-Pac. Co.*, 421 F.2d 92, 95 (9th Cir. 1970) (internal citations omitted). It

says that "[e]quitable estoppel prevents a party from asserting a strict legal right after another

party has been led to form a *reasonable belief* that the right would not be asserted." *Keller*

*Found./Case Found. v. Tracy,* 696 F.3d 835, 847 (9th Cir. 2012) (emphasis added). And because

"estoppel effectively bars a party from asserting a legal right, its application is strictly limited by

equitable considerations and courts must apply it with caution and restraint." *Id.* The elements

of estoppel are:

> (1) the party to be estopped must know the facts; (2) [they] must intend that
> [their] conduct shall be acted on or must so act that the party asserting the
> estoppel has a right to believe it is so intended; (3) the latter must be ignorant
> of the true facts; and (4) [they] must rely on the former's conduct to [their]
> injury.

*Gabriel v. Alaska Elec. Pension Fund*, 773 F.3d 945, 955 (9th Cir. 2014) (internal quotations

omitted).

As discussed above, PLM-OR has not shown as a matter of law that it reasonably relied

to its detriment on PLM-WA's conduct. Further, it has not shown that it was "ignorant of the

true facts." *See Alaska Elec. Pension Fund*, 773 F.3d at 955. For instance, PLM-OR adopted the

ORDER DENYING MOTION FOR PARTIAL
DISMISSAL - 17

"MAINTENANCE" name while its counsel was still negotiating the terms and scope of the settlement agreement. *See* Dkt. # 48-3 at 2–3, 7, 9 (In one email PLM-OR's counsel provided PLM-WA's counsel with a revised draft of the settlement agreement and stated that PLM-OR would not be signing "a confession of judgment"); *see also Heckler v. Cmty. Health Servs. of Crawford Cnty., Inc.*, 467 U.S. 51, 59 n. 10 (1984) (stating that if a party claiming estoppel acted with "knowledge of the truth, or had the means by which with reasonable diligence [they] could acquire the knowledge so that it would be negligence on [their] part to remain ignorant by not using those means, [they] cannot claim to have been misled by relying upon the representation or concealment") (internal quotation and citation omitted).

## IV
### CONCLUSION

For the above reasons, the Court DENIES Defendant's motion for partial dismissal.

Dated this 11th day of February, 2025.

John H. Chun
United States District Judge

ORDER DENYING MOTION FOR PARTIAL
DISMISSAL - 18