Honorable John H. Chun

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT SEATTLE

| | |
|---|---|
| PACIFIC LANDSCAPE MANAGEMENT, INC., a Washington corporation,<br><br>Plaintiff,<br><br>v.<br><br>PACIFIC LANDSCAPE MANAGEMENT, LLC, an Oregon limited liability company,<br><br>Defendants. | No. 2:23-cv-01005-JHC<br><br>**DEFENDANT'S MOTION TO EXCLUDE CERTAIN OPINIONS OF PLAINTIFF'S EXPERTS ROB WALLACE AND NEIL J. BEATON**<br><br>**NOTE ON MOTION CALENDAR:**<br>**Monday, July 14, 2025**<br><br>**ORAL ARGUMENT REQUESTED** |

DEFENDANT'S MOTION TO
EXCLUDE WALLACE AND BEATON OPINIONS
(2:23-cv-01005-JHC) - i

CHRISTENSEN | O'CONNOR
JOHNSON | KINDNESS

1201 Third Avenue
Suite 3600
Seattle, WA 98101-3029
1.206.682.8100

**TABLE OF CONTENTS**

I.  INTRODUCTION ................................................................................................... 1

II. RELEVANT BACKGROUND ............................................................................... 1

    A.  The Survey Report .......................................................................................... 1

    B.  The Damages Report ...................................................................................... 3

III. RELIEF REQUESTED ........................................................................................... 3

IV. LEGAL STANDARD ............................................................................................. 4

V. MR. WALLACE'S OPINIONS AND TESTIMONY REGARDING THE HARPER REPORT SHOULD BE EXCLUDED ...................................................... 5

    A.  Mr. Wallace's Report Discloses Expert Testimony Out of Sequence and Such Testimony Should Be Disallowed Under Rules 26 and 37 of the Federal Rules of Evidence. ............................................................................. 5

    B.  Mr. Wallace's Views and Opinions Regarding the Open-Ended Responses Are Both Unreliable and Irrelevant. ............................................... 7

    C.  Mr. Wallace's Views and Opinions Regarding the Open-Ended Responses Are Both Unreliable and Irrelevant. ............................................... 9

VI. MR. BEATON'S OPINIONS AND TESTIMONY REGARDING LOST PROFITS ARE BASED ON LEGALLY ERRONEOUS POSITIONS AND SHOULD BE LIMITED TO A DISGORGEMENT THEORY .................................. 10

    A.  Under the Lanham Act, Lost Profits Damages are Legally Distinct from Disgorgement Damages, and Thus Must Be Treated Separately ... 10

    B.  Mr. Beaton's Report Fails to Adequately Distinguish These Legally Distinct Damage Determination Methods And Thus Fails to Provide a Reliable Basis for the Stated Opinion .......................................................... 11

    C.  Mr. Beaton's Testimony And Opinions Regarding Damages Should Be Limited To A Disgorgement Theory of Damages .......................... 14

VII. CONCLUSION ...................................................................................................... 15

DEFENDANT'S MOTION TO
EXCLUDE WALLACE AND BEATON OPINIONS
(2:23-cv-01005-JHC) - ii

CHRISTENSEN | O'CONNOR
JOHNSON | KINDNESS
1201 Third Avenue
Suite 3600
Seattle, WA 98101-3029
1.206.682.8100

# TABLE OF AUTHORITIES

**Cases**

*Art Attacks Ink, LLC v. MGA Ent. Inc.*, 581 F.3d 1138 (9th Cir. 2009) ................................... 5

*Bach v. Forever Living Prods. U.S., Inc.*, 473 F. Supp. 2d 1110 (W.D. Wash. 2007) ............... 4

*Daubert v. Merrell Dow Pharms., Inc.,* 509 U.S. 579 (1993) ................................................ 4, 5

*Derenski v. USAA Gen. Indem. Co.*, No. C23-0676JLR,
    2024 WL 5357431 (W.D. Wash. Dec. 10, 2024) ................................................................. 5

*Eastman Kodak Co. v. Southern Photo Materials Co.*, 273 U.S. 359 (1927) .......................... 12

*Fed. Trade Comm'n v. Amazon.com, Inc.*, No. C14-1038JCC,
    2016 WL 4154284 (W.D. Wash. Feb. 9, 2016) ................................................................... 5

*Grasshopper House, LLC v. Clean & Sober Media, LLC*, No. 19-56008,
    2021 WL 3702243 (9th Cir. Aug. 20, 2021) ...................................................................... 11

*Hansen Beverage Co. v. Vital Pharm., Inc.*, No. 08-CV-1545-IEG (POR),
    2010 WL 3069690 (S.D. Cal. Aug. 3, 2010) ..................................................................... 13

*Harbor Breeze Corp. v. Newport Landing Sportfishing, Inc.,* 28 F.4th 35 (9th Cir. 2022) ..... 10

*Harper House, Inc. v. Thomas Nelson, Inc.,* 889 F.2d 197 (9th Cir.1989) .............................. 13

*Holen v. Jozic*, No. C17-1147JLR, 2018 WL 5761775 (W.D. Wash. Nov. 2, 2018) ................ 5

*In re Katz Interactive Call Processing Patent Litig.,* No. 07-2196 RGK (FFMX),
    2009 WL 10676152 (C.D. Cal. Mar. 11, 2009) ................................................................. 14

*Lindy Pen Co. v. Bic Pen Corp.*, 982 F.2d 1400 (9th Cir. 1993) ....................................... 11, 12

*Mercado v. Ahmed*, 974 F.2d 863 (7th Cir. 1992) ................................................................... 14

*Nationwide Transp. Fin. v. Cass Info. Sys., Inc.,* 523 F.3d 1051 (9th Cir. 2008) ................... 14

*Nintendo of Am., Inc. v. Dragon Pac. Int'l*, 40 F.3d 1007 (9th Cir. 1994) .............................. 10

*P & P Imports LLC v. Johnson Enters., LLC*, 46 F.4th 953 (9th Cir. 2022) ............................. 5

*SunEarth, Inc. v. Sun Earth Solar Power Co.*, 839 F.3d 1179 (9th Cir. 2016) ........................ 11

Toyo Tire & Rubber Co., Ltd. v. Hong Kong Tri-Ace Tire Co.,
    281 F.Supp.3d 967 (C.D. California, 2017) ...................................................................... 12

*United States v. Brodie,* 858 F.2d 492 (9th Cir. 1988) ............................................................ 14

*Wong v. Regents of Univ. of Cal.,* 410 F.3d 1052 (9th Cir. 2005) ............................................ 5

DEFENDANT'S MOTION TO
EXCLUDE WALLACE AND BEATON OPINIONS
(2:23-cv-01005-JHC) - iii

CHRISTENSEN | O'CONNOR
JOHNSON | KINDNESS
1201 Third Avenue
Suite 3600
Seattle, WA 98101-3029
1.206.682.8100

**Statutes**

15 U.S.C. § 1117 .................................................................................................................. 10

15 U.S.C. § 1117(a) ............................................................................................................. 10

**Other Authorities**

1a Jerome Gilson, *Trademark Protection and Practice* § 8.08[2] (1992) ................................ 10

Shari S. Diamond, *Reference Manual on Scientific Evidence* (2nd ed., 2000) ......................... 2

**Rules**

Fed. R. Civ. P. 26(a)(2)(D) ..................................................................................................... 4

Fed. R. Civ. P. 37(c)(1) .......................................................................................................... 4

Fed. R. Evid. 403 ..................................................................................................... 1, 5, 9, 10

Fed. R. Evid. 702 .......................................................................................................... passim

DEFENDANT'S MOTION TO
EXCLUDE WALLACE AND BEATON OPINIONS
(2:23-cv-01005-JHC) - iv

CHRISTENSEN | O'CONNOR
JOHNSON | KINDNESS

1201 Third Avenue
Suite 3600
Seattle, WA 98101-3029
1.206.682.8100

## I. INTRODUCTION

Defendant Pacific Landscape Management, LLC's ("PLM-OR", or "Defendant"), respectfully requests that the Court exclude Plaintiff Pacific Landscape Management, Inc. ("PLM-WAs", or "Plaintiffs") expert Rob Wallace's ("Mr. Wallace") opinions and testimony (the "Wallace Rebuttal[1]") relating to allegedly rebutting Defendant's Expert Secondary Meaning Survey Report of Rhonda Harper (the "Harper Report[2]" and "Ms. Harper"), and expert Neil J. Beaton's ("Mr. Beaton") opinions and testimony (the "Beaton Report[3]") relating to allegedly lost profits.

Certain portions of Mr. Wallace's testimony and opinions are unreliable and irrelevant and so should be excluded under the Federal Rules of Evidence 403 and 702. Moreover, certain additional testimony and opinions by Mr. Wallace impermissibly extend beyond the scope of rebuttal and should be struck under the Federal Rules of Civil Procedure Rules 26 and 37.

Additionally, Mr. Beaton's testimony and opinions stating the profits that Plaintiff would have allegedly earned by the date of trial are not based on reliable principles and methods for determining lost profits and thus would not help the trier of fact.

## II. RELEVANT BACKGROUND

### A. The Survey Report

Plaintiff alleges Unfair Competition and False Designation of Origin, Trade Name Infringement, Fraud on the Washington Secretary of State, Cancellation of Washington Registrations Based on Priority and Likelihood of Confusion, and Violation of the Unfair Business Practices Act. PLM-OR denies the allegations.

Consequently, PLM-OR retained a consumer survey expert, Rhonda Harper, to "design[] a survey to objectively and scientifically determine whether Plaintiff's PACIFIC LANDSCAPE MANAGEMENT ha[d] achieved secondary meaning among the relevant

---

[1] Ex. A to the Sixth Declaration of John Whitaker ("Whitaker Declaration") filed concomitantly herewith.
[2] Ex. B to the Whitaker Declaration filed concomitantly herewith.
[3] Ex. C to the Whitaker Declaration filed concomitantly herewith.

DEFENDANT'S MOTION TO
EXCLUDE WALLACE AND BEATON OPINIONS
(2:23-cv-01005-JHC) - 1

CHRISTENSEN | O'CONNOR
JOHNSON | KINDNESS
1201 Third Avenue
Suite 3600
Seattle, WA 98101-3029
1.206.682.8100

universe." Harper Report ¶31. The survey identified 339 individuals who were qualified as members of the defined universe and separated them into a test group and a control group. *Id.* ¶71-72. The test group was presented with an image displaying the words PACIFIC LANDSCAPE MANAGEMENT in a plain sans-serif font, while the control group was presented with an image of the words SEATTLE GARDEN CARE in a plain sans-serif font. *Id.* ¶72, and Appendix B, Ex. 1. In accordance with the *Reference Manual on Scientific Evidence*, the name used in the control group was selected to "not share with the experimental/test stimulus the features whose impact is being assessed." *Id.* ¶47.

In the test group, 40% of respondents indicated "that PACIFIC LANDSCAPE MANAGEMENT is associated with only one company that offers landscaping services," whereas, in the control group, 33% indicated "that SEATTLE GARDEN CARE is associated with one company that offers landscaping services," resulting in a secondary meaning rate of 7%. *Id.* ¶72. This low score was confirmed by a review of the open-ended answers, which indicated that, of the 68 test respondents who answered "only one company," only 17 indicated anything approaching an association with Plaintiff's company; and of these, 10 were appeared to be "guessing, reading back the term name, or providing a response which is difficult to classify," including "it is the name of the company," "Because that's the name," and "Because that's the name of the company. It's not a company that manages Pacific Landscape – it's a company in the Pacific area that Manages your Landscape needs." *Id*. ¶74.

In view of quantitative survey results, the Harper Report concludes that, "[b]ased on the survey results of a net score of 7%, in my opinion, PACIFIC LANDSCAPE MANAGEMENT has not acquired distinctiveness, or secondary meaning." *Id.* ¶77.

To rebut Ms. Harper, Plaintiff engaged Rob Wallace, who alleged, *inter alia*, that 1) the dismissal of valid open-ended responses is unsupported and incorrect, and 2) that the survey includes an inappropriate and legally irrelevant question. Wallace Rebuttal ¶13–33. Additionally, Mr. Wallace alleged additional flaws of the Harper Report to include 1) not discussing the full range of evidence for secondary meaning, 2) not discussing the significance

DEFENDANT'S MOTION TO
EXCLUDE WALLACE AND BEATON OPINIONS
(2:23-cv-01005-JHC) - 2

CHRISTENSEN | O'CONNOR
JOHNSON | KINDNESS
1201 Third Avenue
Suite 3600
Seattle, WA 98101-3029
1.206.682.8100

of PLM-WA's Washington State trademark registration, and 3) ignoring substantial evidence of actual confusion as supporting secondary meaning. *Id.* ¶34–46.

### B. The Damages Report

At the request of Plaintiff, Mr. Beaton "estimated probable economic damages" allegedly sustained by Plaintiff by, specifically, "estimate[ing] the revenue and associated gross profits that PLM-OR is expected to generate through September 2025, the approximate date of trial, as a result of its alleged wrongful conduct." Beaton Report ¶1.

To perform his analysis, Mr. Beaton "reviewed and analyzed PLM-OR's company-wide historical operating results, isolated operating results for PLM-OR's Washington branches, and revenue information for disputed customers located in the disputed territories of Puget Sound and other Washington Counties." *Id.* ¶14. Subsequently, Mr. Beaton calculated revenue and gross profits for each of the three years in question. *See id.* ¶¶15–17. Mr. Beaton then purported to establish "PLM-WA's Lost Profits". *Id.* ¶18. The methodology presented included 1) determining PLM-OR's "total revenue generated from disputed Washington clients," and 2) "appl[ying] PLM-OR's Washington Branches'…gross profit margin" for each year in question as the estimate for "PLM-WA's damages for that period." *Id.* ¶¶19–21. The aggregate amount was characterized as "disgorgement damages," and this figure was used to represent the as the profits Plaintiff would have earned "but for" the allegedly wrongful action. *See id.* ¶¶ 4, 22.

To rebut Mr. Beaton, PLM-OR has retained Mr. Drew E. Voth to provide "rebuttal testimony to damages claimed by Plaintiff…as well as the Expert Report of Neil J. Beaton." *Voth Report*[4] ¶2.

### III. RELIEF REQUESTED

PLM-OR requests this Court disallow certain opinions in Mr. Wallace's report as extending beyond the scope of a rebuttal opinion. Moreover, PLM-OR requests this Court disallow certain opinions regarding the open-ended responses, and the associated questions

---

[4] Ex. D to the Whitaker Declaration filed concomitantly herewith.

DEFENDANT'S MOTION TO
EXCLUDE WALLACE AND BEATON OPINIONS
(2:23-cv-01005-JHC) - 3

CHRISTENSEN | O'CONNOR
JOHNSON | KINDNESS

1201 Third Avenue
Suite 3600
Seattle, WA 98101-3029
1.206.682.8100

regarding whom respondents associated with PACIFIC LANDSCAPE MANAGEMENT as being an unreliable application of the principles and methods to the facts of the case to provide irrelevant testimony. *See Daubert v. Merrell Dow Pharms., Inc.,* 509 U.S. 579, 589 (1993); Fed. R. Evid. 702.

Additionally, PLM-OR requests this court disallow certain opinions in Mr. Beaton's report related to the amount of profits that Plaintiff would have allegedly earned, as they are not based on reliable principles and methods for determining lost profits, and thus would not help the trier of fact.

## IV.    LEGAL STANDARD

"Rule 26 provides that parties must disclose expert testimony 'at the times and in the sequence that the court orders.' … Rule 37 provides that a party who fails to disclose expert testimony in compliance with Rule 26 'is not allowed to use that ... witness to supply evidence ... at a trial, unless the failure was substantially justified or is harmless.' . . . Rule 37(c)(1) 'gives teeth' to Rule 26's disclosure and supplementation requirements. *Unicolors, Inc. v. H&M Hennes & Mauritz, L.P.*, 52 F.4th 1054, 1072–73 (9th Cir. 2022), *citing Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001); Fed. R. Civ. P. 26(a)(2)(D); Fed. R. Civ. P. 37(c)(1).

Testimony by an expert witness is permitted  only if "it is more likely than not that: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case." Fed. R. Evid. 702. "Expert testimony is admissible if the expert is qualified to testify on the matters at issue and the testimony is relevant and reliable." *Bach v. Forever Living Prods. U.S., Inc.*, 473 F. Supp. 2d 1110, 1114 (W.D. Wash. 2007), *citing Daubert,* 509 U.S. at 598.

Courts "should also be mindful of other applicable rules," including that "Rule 403 permits the exclusion of relevant evidence if its probative value is substantially outweighed by

DEFENDANT'S MOTION TO
EXCLUDE WALLACE AND BEATON OPINIONS
(2:23-cv-01005-JHC) - 4

CHRISTENSEN | O'CONNOR
JOHNSON | KINDNESS
1201 Third Avenue
Suite 3600
Seattle, WA 98101-3029
1.206.682.8100

the danger of unfair prejudice, confusion of the issues, or misleading the jury." *Daubert*, 509 U.S. at 595 (internal citations omitted); Fed. R. Evid. 403.

## V. MR. WALLACE'S OPINIONS AND TESTIMONY REGARDING THE HARPER REPORT SHOULD BE EXCLUDED

### A. Mr. Wallace's Report Discloses Expert Testimony Out of Sequence and Such Testimony Should Be Disallowed Under Rules 26 and 37 of the Federal Rules of Evidence.

"[R]ebuttal testimony cannot be used to advance new arguments or evidence." *Derenski v. USAA Gen. Indem. Co*., No. C23-0676JLR, 2024 WL 5357431, at *3 (W.D. Wash. Dec. 10, 2024), *citing Fed. Trade Comm'n v. Amazon.com, Inc*., No. C14-1038JCC, 2016 WL 4154284, at *1 (W.D. Wash. Feb. 9, 2016). "In short, a rebuttal witness may only provide evidence that contradicts or rebuts unforeseen evidence presented by the opposing party." *Derenski*, 2024 WL 5357431, at *3, *citing Holen v. Jozic*, No. C17-1147JLR, 2018 WL 5761775, at *2 (W.D. Wash. Nov. 2, 2018); *Wong v. Regents of Univ. of Cal.,* 410 F.3d 1052, 1060-62 (9th Cir. 2005).

The Wallace Rebuttal, at paragraphs 34-46, goes beyond these limits, and for this reason should be excluded.

Under Ninth Circuit law, courts "assess many factors to determine whether secondary meaning exists, including: 'direct consumer testimony; survey evidence; exclusivity, manner, and length of use of a mark; amount and manner of advertising; amount of sales and number of customers; established place in the market; and proof of intentional copying by the defendant.'" *P & P Imports LLC v. Johnson Enters., LLC*, 46 F.4th 953, 961 (9th Cir. 2022), *citing Art Attacks Ink, LLC v. MGA Ent. Inc*., 581 F.3d 1138, 1145 (9th Cir. 2009).

The Harper Report was conducted to "objectively and scientifically determine whether Plaintiff's PACIFIC LANDSCAPE MANAGEMENT has achieved secondary meaning among the relevant universe." Harper Report ¶31. In addition to quantitative survey results, open-ended answers were obtained from consumers in the relevant universe. *Id.* ¶74. In this manner, the Harper Report is clear as to which factors relevant to secondary meaning it considers (survey

DEFENDANT'S MOTION TO
EXCLUDE WALLACE AND BEATON OPINIONS
(2:23-cv-01005-JHC) - 5

CHRISTENSEN | O'CONNOR
JOHNSON | KINDNESS
1201 Third Avenue
Suite 3600
Seattle, WA 98101-3029
1.206.682.8100

evidence, direct consumer testimony), and it provides valuable evidence that Plaintiff's mark has **not** achieved secondary meaning.

The Harper Report does not purport to offer an opinion on all possible factors.

The Wallace Rebuttal attempts to assert a number of alleged "additional flaws." In this regard, the Wallace Rebuttal cites to the Ninth Circuit's Model Jury Instructions and contends that the Harper Report "fails to account for other well-established forms of proof." *See* Wallace Rebuttal ¶¶34–46.

But the Harper Report does not purport to speak to the whole range of possible factors that could be considered by a factfinder in determining secondary meaning. Nor must it. Instead, as is recognized in the Wallace Rebuttal, the Harper Report relates to "the first factor that juries may consider–consumer perception." *Id.* ¶36. That is all the Harper Report purports to do, and there is no requirement, cited by the Wallace Rebuttal or otherwise, that it do anything more.

These supposed "flaws" in the Harper Report are nothing more than Ms. Harper limiting her report to that which she is an expert on—"marketing and research." Harper Report ¶1. Mr. Wallace's opinions regarding these other factors (Wallace Rebuttal ¶¶34–37), the significance of PLM-WA's Washington State Trademark Registration (*id.* ¶¶38–40), and purported evidence of actual confusion (*id.* ¶¶41–46) are therefore irrelevant to the rebuttal of opinions offered by the Harper Report.

For instance, nowhere in the Harper Report is it stated that survey evidence is the *only* factor to consider in determining secondary meaning; accordingly, the opinion testimony in paragraphs 34–37 of the Wallace Rebuttal that notes there are other factors that may be considered is irrelevant to rebutting the contents of the Harper Report. Moreover, nowhere in the Harper Report is there any statement related to trademark registrations and the implications thereof; accordingly, the opinion testimony in paragraphs 38–40 of the Wallace Rebuttal discussing evidence related to trademark registrations is irrelevant to rebutting the contents of the Harper Report. Finally, there is nothing in the Harper Report asserting or relating to the purported actual confusion; accordingly, the opinion testimony in paragraphs 41–46 of the

DEFENDANT'S MOTION TO
EXCLUDE WALLACE AND BEATON OPINIONS
(2:23-cv-01005-JHC) - 6

CHRISTENSEN | O'CONNOR
JOHNSON | KINDNESS

1201 Third Avenue
Suite 3600
Seattle, WA 98101-3029
1.206.682.8100

Wallace Rebuttal discussing the legal implications of actual confusion is irrelevant to rebutting the contents of the Harper Report.

Rather than rebutting anything in the Harper Report, these passages all seek to introduce new expert opinions—for the first time—under the guise of rebutting the Harper Report. But under Rule 26, Plaintiff was required to disclose expert testimony "at the times and in the sequence that the court orders."

Plaintiff had every opportunity to present expert testimony regarding the factors presented in the Wallace Rebuttal at paragraphs 34–46 in an opening expert witness report. Plaintiff did not do so then and therefore cannot do so now. A rebuttal expert cannot be used to "advance new arguments or evidence" that Plaintiff failed to introduce at the appropriate time. Rule 26 forbids it, and Rule 37 mandates that a party that fails to provide expert testimony in the correct sequence is not allowed to use that testimony.

Accordingly, PLM-OR respectfully requests that paragraphs 34–46 of the Wallace Rebuttal, as well as any testimony by Mr. Wallace directed thereto, be excluded.

### B. Mr. Wallace's Views and Opinions Regarding the Open-Ended Responses Are Both Unreliable and Irrelevant.

The Harper Report describes a survey where respondents were asked whether they associate the term PACIFIC LANDSCAPE MANAGEMENT with a) only one company that offers landscaping services, b) more than one company that offers landscaping services, c) no particular company that offers landscaping services, or d) if they were unsure. Harper Report ¶52. In the survey, 40% of test respondents indicated that PACIFIC LANDSCAPE MANAGEMENT was associated with only one company, while 33% of the control respondents indicated that SEATTLE GARDEN CARE was associated with one company. *Id.* ¶72.

In view of this, the net secondary meaning rate was determined to be 7%. *Id. This 7% value was the basis for the final conclusion of the report. Id.* ¶77 ("**Based on the survey results of a net score of 7%,** in my opinion, PACIFIC LANDSCAPE MANAGEMENT has not acquired distinctiveness, or secondary meaning.") (emphasis added).

DEFENDANT'S MOTION TO
EXCLUDE WALLACE AND BEATON OPINIONS
(2:23-cv-01005-JHC) - 7

CHRISTENSEN | O'CONNOR
JOHNSON | KINDNESS
1201 Third Avenue
Suite 3600
Seattle, WA 98101-3029
1.206.682.8100

The open-ended answers, the Harper Report expressly notes, are analyzed to provide "more reassurance or confirmation than actual insight." *Id*. ¶74. The open-ended questions provide this "reassurance or confirmation," because, even within the minority of respondents who indicated the mark was associated with only one company, a smaller minority (17 out of 68) provided responses indicating the mark described "only one company", and of that minority, most (10 out of 17) appeared to be guessing, reading back the term name, or providing a difficult to classify response. *Id*.

The Wallace Rebuttal alleges that "[b]y failing to apply a consistent or transparent standard in evaluating open-ended responses—and by discarding valid answers without justification—Ms. Harper undermines the integrity of her survey findings." Wallace Rebuttal ¶30. It also states that "several demonstrate a clear association between the name PACIFIC LANDSCAPE MANAGEMENT and a single, specific landscaping company," which is said to reflect "the very type of consumer perception that supports a finding of secondary meaning." *Id*. ¶29.

This allegation is a non-sequitur. The Harper Report is explicit that the survey findings are "***based on*** the survey results of a net score of 7%." Harper Report ¶77 (emphasis added). That number represents the difference between respondents identifying PACIFIC LANDSCAPE MANAGEMENT with one particular source and those identifying SEATTLE GARDEN CARE—a completely fictitious entity—with one particular source. The open-ended responses are ***drawn*** from the subset of respondents that identified the mark with one particular source. The allegation that the Harper report engages in "discarding valid answers" (Wallace Rebuttal ¶30) is thus wholly without merit because nothing forming the basis of the opinion is being discarded.

In this manner, the Wallace Rebuttal goes far beyond disputing the discussion of evidence in the Harper Report. Rather, these statements in the Wallace Rebuttal are nothing more than obfuscations thrown out to distract from the core findings of the survey—that the mark PACIFIC LANDSCAPE MANAGEMENT achieved a net score of only 7%, as compared

DEFENDANT'S MOTION TO
EXCLUDE WALLACE AND BEATON OPINIONS
(2:23-cv-01005-JHC) - 8

CHRISTENSEN | O'CONNOR
JOHNSON | KINDNESS

1201 Third Avenue
Suite 3600
Seattle, WA 98101-3029
1.206.682.8100

to the 35% to 50% that is typically found probative. In these statements, the Wallace Rebuttal completely ignores that the open-ended responses that are allegedly being "dismissed" *are in fact included in calculating the final 7% net score*.

Nothing is being improperly "dismissed." Allegations to the contrary have no basis in any stated principles and methods and do nothing more than attempt to confuse the issue. Accordingly, the statements or opinions contained in paragraphs 29 and 30 of the Wallace Rebuttal should be excluded under Rule 702 as being unreliable and irrelevant. Moreover, even if, *arguendo*, they were considered relevant, they should be excluded under Rule 403 because any probative value is substantially outweighed by a danger of confusing the issues.

### C. Mr. Wallace's Views and Opinions Regarding the Open-Ended Responses Are Both Unreliable and Irrelevant.

The Wallace Rebuttal is correct that secondary meaning is about source recognition and not recall of the company's exact name. Wallace Rebuttal ¶32. The Wallace Rebuttal alleges that questions asking respondents "with what one specific company do you associate it with" were "a requirement that respondents name the company" which "introduces a higher threshold than the law requires." *Id.*

But as has been noted, Ms. Harper's conclusions are based on the 7% score for PACIFIC LANDSCAPE MANAGEMENT, i.e., the number of respondents who indicated the mark was identifiable with "only one company that offers landscaping services," and not with recall of the company's exact name. For respondents' answers to be considered in Plaintiff's favor, the *only* requirement was an affirmative answer to identifying the mark with "only one company." Despite this, the mark PACIFIC LANDSCAPE MANAGEMENT achieved a score of a mere 7%. The follow-up questions, as the Harper Report notes, add reassurance or confirmation, but are not relied upon in any way for drawing the conclusions of the Harper Report.

As such, Mr. Wallace's opinions regarding the question "with what one specific company do you associate it with" are unreliable and irrelevant. Rather than provide expert

DEFENDANT'S MOTION TO
EXCLUDE WALLACE AND BEATON OPINIONS
(2:23-cv-01005-JHC) - 9

CHRISTENSEN | O'CONNOR
JOHNSON | KINDNESS
1201 Third Avenue
Suite 3600
Seattle, WA 98101-3029
1.206.682.8100

insight into the survey results, they merely confuse the issue by ascribing arguments to the Harper Report that are not made by the Harper Report.

Accordingly, the statements or opinions contained in paragraphs 31–33 of the Wallace Rebuttal should be excluded under Rule 702 as being unreliable and irrelevant. Moreover, even if, *arguendo*, they were considered relevant, they should be excluded under Rule 403 because any probative value is substantially outweighed by a danger of confusing the issues.

## VI. MR. BEATON'S OPINIONS AND TESTIMONY REGARDING LOST PROFITS ARE BASED ON LEGALLY ERRONEOUS POSITIONS AND SHOULD BE LIMITED TO A DISGORGEMENT THEORY

### A. Under the Lanham Act, Lost Profits Damages are Legally Distinct from Disgorgement Damages, and Thus Must Be Treated Separately

Pursuant to 15 U.S.C. § 1117(a) (Section 35 of the Lanham Act), if a violation of Trademark rights is established, the plaintiff is entitled, "subject to the principles of equity, to recover "(1) defendant's profits [i.e., "disgorgement"], (2) any damages sustained by the plaintiff [i.e. "plaintiff's lost profits"], and (3) the costs of the action." "[T]he recovery of both plaintiff's lost profits *and* disgorgement of defendant's profits is generally considered a double recovery under the Lanham Act." *Nintendo of Am., Inc. v. Dragon Pac. Int'l*, 40 F.3d 1007, 1010 (9th Cir. 1994) (emphasis added) *citing* 15 U.S.C. § 1117; 1a *Jerome Gilson, Trademark Protection and Practice* § 8.08[2], at 8–181 to 8–182 (1992).

The availability of disgorgement as a remedy is often constrained by courts based on the mental state of the defendant. Thus, while "willfulness is not an 'inflexible precondition to recovery' of a defendant's profits" under the Lanham Act, the "'defendant's mental state is a ***highly important consideration*** in determining whether an award of [defendant's] profits is appropriate.'" *Harbor Breeze Corp. v. Newport Landing Sportfishing, Inc.,* 28 F.4th 35, 38 (9th Cir. 2022) (emphasis added)*, quoting Romag Fasteners, Inc v. Fossil, Inc*., 590 U.S. 212, 219, (2020). Analytically, an award of the ***defendant's profits***—when, ***and only if***, it is justified—requires that the plaintiff establish "the defendant's gross profits from the infringing activity with reasonable certainty." *Grasshopper House, LLC v. Clean & Sober Media, LLC*, No. 19-

DEFENDANT'S MOTION TO
EXCLUDE WALLACE AND BEATON OPINIONS
(2:23-cv-01005-JHC) - 10

CHRISTENSEN | O'CONNOR
JOHNSON | KINDNESS
1201 Third Avenue
Suite 3600
Seattle, WA 98101-3029
1.206.682.8100

56008, 2021 WL 3702243, at *2 (9th Cir. Aug. 20, 2021), *citing Lindy Pen Co. v. Bic Pen Corp.*, 982 F.2d 1400, 1408 (9th Cir. 1993), *abrogated on other grounds by SunEarth, Inc. v. Sun Earth Solar Power Co.*, 839 F.3d 1179 (9th Cir. 2016). In this manner, the defendant's profits may, subject to "principles of equity," be identified as a remedy for infringement. *See Romag Fasteners,* 140 S. Ct. at 1496.

Plaintiff's lost profits, on the other hand, requires the "plaintiff must prove both the fact and the amount of damage…measured by any direct injury which a plaintiff can prove, as well as any lost profits which the plaintiff would have earned **but for** the infringement." *Lindy Pen*, 982 F.2d at 1407 (emphasis added) (citation omitted). While "a court may award damages *based* on defendant's profits on the theory of unjust enrichment," the plaintiff still "must make 'a prima facie showing of **reasonably forecast profits**.'" *Id*. (emphasis added) (citation omitted). In this manner, the defendant's profits may be used *as a basis* (or proxy) for calculating the *plaintiff's* lost profits.

Thus, the profits earned by a defendant may be used in two distinct analytical approaches to calculating damages: one—disgorgement—requires merely a showing of gross profits, subject to a consideration of the principles of equity; the other—lost profits—requires no particular mental state, but instead requires the *defendant's* profits be reasonably forecast as *plaintiff's* profits.

### B. Mr. Beaton's Report Fails to Adequately Distinguish These Legally Distinct Damage Determination Methods And Thus Fails to Provide a Reliable Basis for the Stated Opinion

In several instances, Mr. Beaton's report purports to assert PLM-OR's profits to be synonymous with Plaintiff's lost profits. *See* Beaton Report ¶¶ 15-21, 23. However, in other instances, Mr. Beaton's report presents itself as providing a determination of disgorgement damages. The report fails to properly distinguish these analytically distinct legal modes, and to the extent it purports to establish Plaintiff's lost profits, it utterly fails to provide any showing

DEFENDANT'S MOTION TO
EXCLUDE WALLACE AND BEATON OPINIONS
(2:23-cv-01005-JHC) - 11

CHRISTENSEN | O'CONNOR
JOHNSON | KINDNESS
1201 Third Avenue
Suite 3600
Seattle, WA 98101-3029
1.206.682.8100

these profits could be "reasonably forecast" onto Plaintiff, and thus the report lacks a reliable basis under Rule 702.

A "reasonably forecast" determination of profits should provide some basis for why the defendant's profits are an appropriate measure for the profits the plaintiff may have lost as a result of the alleged infringement. For instance, in *Toyo Tire & Rubber Co., Ltd. v. Hong Kong Tri-Ace Tire Co.*, the Plaintiff established the **amount** of Defendants' profits for a tire product line that was related to the infringing mark, and subsequently requested 50% of the Defendants' profits in that category. 281 F.Supp.3d 967, 989 (C.D. California, 2017). However, while the amount of the profits was adequately established, the plaintiff assigned 50% of those profits to itself merely "based on the 'gut feeling' of its Senior Director of Marketing." *Id.* In view of that, the Court held that the plaintiff had "clearly failed to meet its burden of proving reasonably certain lost profits by providing the Court an arbitrary percentage of total sales it 'feels' it should be awarded." *Id.* at 990; *citing Lindy Pen*, 982 F.2d at 1408.

In a similar manner, in his analysis, Mr. Beaton purports to establish "PLM-WA's Lost Profits." Beaton Report ¶¶18-22. The methodology presented included 1) determining PLM-OR's "total revenue generated from disputed Washington clients," and 2) "applied PLM-OR's Washington Branches'…gross profit margin" for each year in question as the estimate for "PLM-WA's damages for that period." *Id.* ¶¶19–21. The Beaton Report characterized these "disgorgement damages" as the profits Plaintiff would have earned "but for" the allegedly wrongful action. *See id.* ¶¶ 4, 22.

Even setting aside this inappropriate conflation of two legally distinct categories of damages, what is completely absent from the Beaton Report and its analytical method is ***any*** basis for assuming that 100% of PLM-OR's profits from the Washington clients in the disputed territories would have inured to Plaintiff's benefit. While "[d]amages are not rendered uncertain because they cannot be calculated with absolute exactness" (*Eastman Kodak Co. v. Southern Photo Materials Co.*, 273 U.S. 359, 379 (1927)), **some** amount of exactness is required.

DEFENDANT'S MOTION TO
EXCLUDE WALLACE AND BEATON OPINIONS
(2:23-cv-01005-JHC) - 12

CHRISTENSEN | O'CONNOR
JOHNSON | KINDNESS
1201 Third Avenue
Suite 3600
Seattle, WA 98101-3029
1.206.682.8100

Courts have rejected such conclusory assertions of a "reasonably forecast" lost profits determination. For instance, in *Hansen Beverage Co. v. Vital Pharmaceuticals*, plaintiff Hansen attempted to assert that the defendant's earned profits from two product lines (Power Rush and Princess) were a reasonable compensation for plaintiff's lost profits on a theory that "for every Power Rush or Princess sale, Hansen lost a Monster Energy or Hitman sale." *Hansen Beverage Co. v. Vital Pharm., Inc.*, No. 08-CV-1545-IEG (POR), 2010 WL 3069690, at *7 (S.D. Cal. Aug. 3, 2010). The Court held that there was "little evidence" for this assertion given the dozens of competing products on the market, noting that "even if consumers are likely to suffer injury from a defendant's deception about its own product, when advertising does not directly compare defendant's and plaintiff's products, **when numerous competitors participate in a market**, or when the products are aimed at different market segments, **injury to a particular competitor may be a small fraction of the defendant's sales, profits, or advertising expenses**." *Id.* (emphasis added), *quoting Harper House, Inc. v. Thomas Nelson, Inc.,* 889 F.2d 197, 209 (9th Cir.1989).

A blank assertion that each and every disputed client would have taken their business to Plaintiff, **but for** the allegedly infringing activity, provides no degree of exactness other than that of a "gut feeling." This is particularly true where, as is the case here, the market is **highly competitive**, with dozens—if not hundreds—of firms all competing for the same business in the territory. There is simply no basis in the Beaton Report for assigning all of PLM-OR's profits in the disputed territories to PLM-WA, as if the two firms operated in a zero-sum market. Nor is any such assumption stated.

Thus, the Beaton Report fails to articulate why PLM-OR's profits in the disputed territories "is a reasonable measure of compensation" for Plaintiff's lost profits.

DEFENDANT'S MOTION TO
EXCLUDE WALLACE AND BEATON OPINIONS
(2:23-cv-01005-JHC) - 13

### C. Mr. Beaton's Testimony And Opinions Regarding Damages Should Be Limited To A Disgorgement Theory of Damages

The Beaton Report fails to perform a proper lost profits analysis. Confusingly, the Beaton Report also fails to properly distinguish between whether it purports to present a lost profits analysis or a disgorgement analysis.

Even were Plaintiff to establish PLM-OR violated Plaintiff's trademark rights (which it cannot), the Beaton Report is unreliable as expert testimony because it fails to "reasonably forecast" Plaintiff's alleged lost profits. This convoluted presentation impermissibly blurs the lines between a lost profits analysis and a disgorgement analysis in a manner that ignores the important legal distinctions between these concepts. The Voth Report correctly notes this discrepancy, stating that "a profit disgorgement analysis is the only analysis performed and detailed in the Beaton Report. Therefore, it appears that the Beaton Report references to lost profits are in error. To the extent Plaintiff claims lost profits, the Beaton Report has not performed commonly accepted analyses to prove any Plaintiff lost profits, or that Plaintiff lost a single sale due to the alleged infringement." *Voth Report* ¶8.

"Expert testimony that is based on an erroneous understanding or application of the law cannot meet the requirements of Rule 702 because it cannot logically assist the trier of fact." *In re Katz Interactive Call Processing Patent Litig.,* No. 07-2196 RGK (FFMX), 2009 WL 10676152, at *2 (C.D. Cal. Mar. 11, 2009), *citing Mercado v. Ahmed*, 974 F.2d 863, 869–70 (7th Cir. 1992). Such expert testimony is thus "'not only superfluous but mischievous.'" *Nationwide Transp. Fin. v. Cass Info. Sys., Inc.,* 523 F.3d 1051, 1059 (9th Cir. 2008) (quoting *United States v. Brodie,* 858 F.2d 492, 497 (9th Cir. 1988)).

Accordingly, certain opinions expressed in the Beaton Report that fail to speak reliably to the matter being asserted should be excluded under Rule 702.

For instance, the Beaton Report asserts at the outset: "Accordingly, it is my opinion that PLM-WA would have earned gross profits amounting to [Confidential Amount] 'but for' PLM-OR's alleged wrongful actions." Beaton Report ¶5. However, there is nothing in Mr. Beaton's

DEFENDANT'S MOTION TO
EXCLUDE WALLACE AND BEATON OPINIONS
(2:23-cv-01005-JHC) - 14

CHRISTENSEN | O'CONNOR
JOHNSON | KINDNESS
1201 Third Avenue
Suite 3600
Seattle, WA 98101-3029
1.206.682.8100

analysis that establishes a "but for" connection between PLM-OR's profits and Plaintiff's alleged lost profits. The Beaton Report even fails to assert this as an underlying assumption. Given the number of competitors in the Washington State landscaping market, such a "but for" assertion is more than just unpersuasive, but rather is unreliable, and thus should be excluded.

In another instance, at the end of each of paragraphs 19, 20, and 21, the Beaton Report asserts that the figure calculated for each time period represents a "remedy for PLM-WA's damages for that period." However, as described above, there is nothing in the Beaton Report that would reasonably forecast PLM-OR's profits in each time period to Plaintiff's profits on a one-to-one basis. Such assertions are no more than an expression of an unreliable "gut feeling," and thus should be excluded.

Finally, in paragraph 23, the Beaton Report asserts "that PLM-WA sustained, or will sustain, economic damages totaling [Confidential Amount]." However, there is no basis in the Beaton Report to support this assertion, as there is no attempt made at all to "reasonably forecast" PLM-OR's profits as those that would have been earned by Plaintiff. These assertions should thus be similarly excluded.

## VII.   CONCLUSION

For all the reasons stated above, PLM-OR respectfully requests that the Court grant PLM-OR's Motion to Exclude the identified opinions of Mr. Beaton and Mr. Wallace.

### LCR 7(e) CERTIFICATION

I certify that this memorandum contains 4,916 words, in compliance with the Local Civil Rules.

Dated June 16, 2025.            CHRISTENSEN O'CONNOR
                                JOHNSON KINDNESS<sup>PLLC</sup>

                                s/John Whitaker
                                John D. Denkenberger, WSBA No. 25,907
                                John Whitaker, WSBA No. 28,868

DEFENDANT'S MOTION TO
EXCLUDE WALLACE AND BEATON OPINIONS
(2:23-cv-01005-JHC) - 15

CHRISTENSEN | O'CONNOR
JOHNSON | KINDNESS
1201 Third Avenue
Suite 3600
Seattle, WA 98101-3029
1.206.682.8100

1
2
3
4
5

1201 Third Avenue, Suite 3600
Seattle, WA 98101-3029
Telephone: 206.682.8100
E-mail: john.denkenberger@cojk.com,
john.whitaker@cojk.com, litdoc@cojk.com

*Attorneys for Defendant Pacific Landscape Management, LLC*

6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

DEFENDANT'S MOTION TO
EXCLUDE WALLACE AND BEATON OPINIONS
(2:23-cv-01005-JHC) - 16

CHRISTENSEN | O'CONNOR
JOHNSON | KINDNESS

1201 Third Avenue
Suite 3600
Seattle, WA 98101-3029
1.206.682.8100