The Honorable John H. Chun

UNITED STATES DISTRCIT COURT
WESTERN DISTRICT OF WASHINGTON AT SEATTLE

| | |
|---|---|
| PACIFIC LANDSCAPE MANAGEMENT, INC., a Washington corporation,<br><br>Plaintiff,<br><br>vs.<br><br>PACIFIC LANDSCAPE MANAGEMENT, LLC, an Oregon liability company,<br><br>Defendant. | NO. 2:23-cv-01005-JHC<br><br>PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO EXCLUDE CERTAIN OPINIONS OF ROB WALLACE AND NEIL J. BEATON<br><br>NOTED ON MOTION CALENDAR: July 14, 2025<br><br>*Oral Argument Requested* |

## I.     INTRODUCTION

Defendant Pacific Landscape Management, LLC (**PLM-OR**)'s motion to exclude expert testimony (Dkt. # 81) should be denied because it is baseless. Plaintiff Pacific Landscape Management, Inc. (**PLM-WA**)'s experts are highly regarded in their fields, each have testified many times, and their opinions are well within the subject matter that experts in their positions frequently offer. PLM-OR elected not to depose either expert. Nevertheless, it will have the chance to examine them at trial and argue about weight and scope at that time. The present motion is extreme in the

PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO EXCLUDE EXPERT OPINIONS

Page 1

Ellis | Li | McKinstry
1700 Seventh Avenue, Suite 1810
Seattle, WA 98101-1820
206.682.0565 Fax: 206.625.1052

1  relief it seeks and is both premature and meritless in that PLM-OR has not
2  demonstrated that the anticipated testimony fails under FRE 702.

## II.   FACTS

**A.   PLM-WA discloses Neil Beaton, its damages expert.**

On April 30, 2025, PLM-WA timely disclosed Neil Beaton as its damages expert.[1]

Mr. Beaton is an economist and business valuation specialist who has testified in trial more than 30 times just in the last four years, in addition to over 60 times in depositions and almost another 30 in mediation or arbitration.[2] He opines that "PLM-OR will have generated approximately $▮▮▮▮▮ in revenue and $▮▮▮▮▮ in gross profit from clients located in the Puget Sound and other Washington counties where PLM-WA has superior trademark rights" through the time of trial.[3] He opines that PLM-OR's gross profits constitute both "disgorgement damages" that PLM-OR wrongly received, as well as the measure of profits that PLM-WA lost "but for" PLM-OR's infringement.[4] He concludes:

> Based on the foregoing analysis, it is my opinion, assuming that PLM-OR is found liable for the actions alleged by PLM-WA, that PLM-WA sustained, or will sustain, economic damages totaling $▮▮▮▮▮ over the 33-month period from January 1, 2023 through September 30, 2025, on a more probable than not basis. These economic damages are comprised of disgorged gross profits earned by PLM-OR.[5]

PLM-OR did not take Mr. Beaton's deposition.

---

[1] Declaration of Nathaniel Taylor in Support of Response to Motion to Exclude, Ex. 1. PLM-OR filed a redacted version of the report, Dkt. # 82-3. But it omitted Exhibits 1-3 regarding Mr. Beaton's qualifications. These exhibits are Exhibit 1 to the Taylor Declaration.
[2] Taylor Decl. Ex. 1.
[3] Dkt. # 82-3, at p. 4. The amounts themselves are not germane to PLM-OR's motion and, therefore, are not publicly disclosed here pursuant to the Court's protective order.
[4] Dkt. # 82-3, at p. 4, 7-10.
[5] *Id.,* at p. 10.

PLAINTIFF'S RESPONSE TO
DEFENDANT'S MOTION TO
EXCLUDE EXPERT OPINIONS

Page 2

Ellis | Li | McKinstry
1700 Seventh Avenue, Suite 1810
Seattle, WA 98101-1820
206.682.0565  Fax: 206.625.1052

**B.     PLM-WA discloses Rob Wallace, its rebuttal survey expert.**

On April 30, 2025, PLM-OR disclosed Rhonda Harper on the issue of secondary meaning.[6] Her report discusses a survey that she took of 339 respondents[7] located in Chelan, Island, King, Kitsap, Kittitas, Pierce, Skagit, Snohomish, Thurston, and Whatcom Counties.[8] She states that, after subtracting responses provided by the control group, her survey indicates that only 7% of respondents associated PLM-WA's trademark with a single source of landscaping services.[9] Therefore, she concluded that the mark has "not acquired distinctiveness, or secondary meaning."[10]

PLM-OR then filed a motion for summary judgment based on the above opinion, arguing that Ms. Harper's report "conclusively demonstrates that the Management Name has not acquired secondary meaning."[11]

On May 29, 2025, PLM-WA timely disclosed Rob Wallace as its rebuttal expert.[12] Mr. Wallace has worked as a brand communications consultant for more than 40 years. Through his work with dozens of Fortune 500 companies, he has developed a deep understanding of brand communications, consumer perception, and the empirical testing standards required to determine secondary meaning.[13] Mr. Wallace has served as an expert witness in more than 95 cases involving trademarks, trade dress, consumer perception, secondary meaning, and survey methodology.[14]

---

[6] Dkt. # 82-1.
[7] *Id.*, at pp. 15-16 (¶ 43).
[8] *Id.*, at p. 47.
[9] *Id.*, at p. 23 (¶¶ 76-77).
[10] *Id.*, at p. 22 (¶¶ 76-77).
[11] Dkt. # 88, at p. 12.
[12] Dkt. # 82-2.
[13] *Id.*, at p. 3.
[14] *Id.*, at p. 2.

Mr. Wallace opines that Ms. Harper's conclusion that PLM-WA's trademark has not acquired secondary meaning is fundamentally flawed.[15] In summary, he explains this is because:

- Ms. Harper did not survey the appropriate universe by including persons too young, too old, and without enough discretionary income to be candidates to hire PLM-WA, as well as those who reside far outside PLM-WA's core geographic market;[16]

- The survey included a flawed control group that did not serve the essential "placebo" function needed for the results to be scientifically reliable;[17]

- The survey universe was too small, which delivered less than the 95% confidence level with the ± 5 percentage-point margin of error that Ms. Harper claimed and that scientists traditionally adopt;[18]

- Ms. Harper dismissed valid open-ended responses that supported a finding of secondary meaning;[19]

- The survey inappropriately asked if respondents could name PLM-WA, which is irrelevant to establishing secondary meaning;[20] and

- Ms. Harper's conclusion that PLM-WA's mark has not acquired secondary meaning did not consider the many other ways a trademark owner can make that showing, including through direct consumer testimony, duration of trademark use, exclusivity, and actual confusion. She also did not account for the presumption of validity that PLM-WA's registration certificate provides.[21]

PLM-OR did not take Mr. Wallace's deposition.

---

[15] *Id.,* at p. 18 (¶ 47).
[16] *Id.,* at pp. 6-9 (¶¶ 15-16).
[17] *Id.,* at pp. 9-10 (¶¶ 17-20).
[18] *Id.,* at pp. 10-12 (¶¶ 21-25).
[19] *Id.,* at pp. 12-13 (¶¶ 26-30).
[20] *Id.,* at pp. 13-14 (¶¶ 30-33).
[21] *Id.,* at pp. 14-18 (¶¶ 34-46).

### III. AUTHORITY

**A. PLM-WA's damages expert should be allowed to testify about the types of damages for which the Lanham Act and Washington law expressly provide.**

The Lanham Act provides that a successful plaintiff "*shall be entitled*, . . . subject to the principles of equity, to recover (1) defendant's profits, [and] (2) any damages sustained by the plaintiff. . . ." 15 U.S.C. § 1117(a) (further stating: "The court *shall* assess such profits and damages. . . .") (emphasis added). "Washington trademark laws provide a similar standard for monetary relief. . . ." *Nat'l Prods., Inc. v. Aqua Box Prods., LLC*, No. C12-0605-RSM, 2013 WL 1399346, at *2 (W.D. Wash. Apr. 5, 2013) (quoting RCW 19.77.150). *See also*, RCW 19.86.090 (authorizing damages under the CPA).

As the Ninth Circuit recognizes, district courts have "a wide scope of discretion" in fashioning a remedy for trademark infringement. *Jason Scott Collection, Inc. v. Trendily Furniture, LLC*, 68 F.4th 1203, 1222 (9th Cir. 2023) (quoting *Skydive Ariz., Inc. v. Quattrocchi*, 673 F.3d 1105, 1110, 1113 (9th Cir. 2012)) (additional citation omitted). A district court abuses its discretion in awarding damages only if its ruling is "illogical, implausible, or without support in inferences that may be drawn from facts in the record." *Id.* (quoting *United States v. Hinkson*, 585 F.3d 1247, 1251 (9th Cir. 2009)).

"[I]t is essential that trial courts carefully fashion remedies which will take all the economic incentive out of trademark infringement." *Id.* (quoting *Playboy Enterprises, Inc. v. Baccarat Clothing Co., Inc.*, 692 F.2d 1272, 1275 (9th Cir. 1982)). To this end, the Ninth Circuit has held that a court may grant "a just monetary award" under Section 1117 even where a plaintiff cannot prove actual damages, "so long as it constitutes compensation for the plaintiff's losses or the defendant's unjust enrichment and is not simply a penalty for the defendant's conduct." *Id.*, *quoting*

*Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1146 (9th Cir. 1997)) (internal quotation marks and citation omitted in original).

"[I]n assessing profits the plaintiff shall be required to prove defendant's sales only; defendant must prove all elements of cost or deduction claimed." *Nat'l Prods., Inc. v. Arkon Res., Inc.*, No. C15-1553-JPD, 2017 WL 5499801, at *1 (W.D. Wash. Nov. 16, 2017) (quoting 15 U.S.C. § 1117(a)). "If the defendant fails to adequately prove such costs, the trademark owner is entitled to all gross profits." *Id.* (citing *Lindy Pen Co. v. Bic Pen Corp.*, 982 F.2d 1400, 1408 (9th Cir. 1993) ("Once the plaintiff demonstrates gross profits, they are presumed to be the result of the infringing activity. The defendant thereafter bears the burden of showing which, if any, of its total sales are not attributable to the infringing activity, and, additionally, any permissible deductions for overhead."). *See also Nintendo of Am., Inc. v. Dragon Pac. Int'l*, 40 F.3d 1007, 1012 (9th Cir. 1994) ("[W]here infringing and noninfringing elements of a work cannot be readily separated, all of a defendant's profits should be awarded to a plaintiff."). Moreover, once "the court establishes that damages are warranted, 'there need only be substantial evidence to permit the [trier of fact] to draw *reasonable inferences* and make *a fair and reasonable assessment*' as to the amount of damages." *Jason Scott Collection, Inc.*, 68 F.4th at 1222 (quoting *Skydive*, 673 F.3d at 1112) (emphasis and brackets in original; additional citation omitted).

"Because proof of actual damage is often difficult, a court may award damages based solely on defendant's profits on a theory of unjust enrichment." *Safeworks, LLC v. Teupen Am., LLC*, 717 F. Supp.2d 1181, 1194 (W.D. Wash. 2010) (citing *Lindy Pen Co.*, 982 F.2d at 1407) (citing 2 McCarthy on Trademarks and Unfair Competition, § 30:27, at 511 (2d ed. 1984)). *See also AECOM Energy & Constr., Inc. v. Morrison Knudsen Corp.*, 851 F. App'x 20, 21 (9th Cir. 2021) ("Under 15 U.S.C. § 1117(a), a plaintiff is generally entitled to a disgorgement award equal to the defendant's profits derived from the infringing activity.").

1    Here, Mr. Beaton opines that PLM-OR received "$▆▆▆ in gross profit
2  from clients located in the Puget Sound and other Washington counties where PLM-
3  WA has superior trademark rights," and that those earnings also serve as a measure
4  of the profits that PLM-WA lost.[22] In doing so, he incorporates remedies for which
5  the Lanham Act expressly provides. As the above authorities indicate, "defendant's
6  profits" are awardable in disgorgement to prevent PLM-OR's unjust enrichment. Mr.
7  Beaton explains that the amount that PLM-OR earned also is the amount of gross
8  profits PLM-WA would have earned as "damages" but for PLM-OR's infringement.
9  Because the Lanham Act and Washington law broadly provide both remedies, PLM-
10 OR is not entitled to prevent Mr. Beaton from testifying about them at trial.

**B.   PLM-WA's rebuttal survey expert should be allowed to testify on matters that respond to PLM-OR's expert.**

Rebuttal experts may offer testimony that "is intended solely to contradict or rebut evidence on the same subject matter identified by another party under Rule 26(a)(2)(B) or (C)." Fed. R. Civ. P. 26(a)(2)(D)(ii). "The function of rebuttal testimony is to explain, repel, counteract or disprove evidence of the adverse party." *Qualey v. Pierce Cnty.*, No. 3:23-cv-05679-TMC, 2025 WL 254810, at *3 (W.D. Wash. Jan. 21, 2025) (quoting *Marmo v. Tyson Fresh Meats, Inc.*, 457 F.3d 749, 759 (8th Cir. 2006)). As long as the expert meets the threshold established by Federal Rule of Evidence 702, he or she "may testify and the jury decides how much weight to give that testimony." *Primiano v. Cook*, 598 F.3d 558, 565 (9th Cir. 2010), *as amended* (Apr. 27, 2010) (discussing *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993)).

Here, PLM-OR's expert conducted a survey that, given who commissioned it, not surprisingly shows that the Management Mark has not acquired secondary meaning. In its pending motion for summary judgment PLM-OR claims this survey

---

[22] Dkt. # 82-3 at pp. 4-5.

1  "conclusively establishes" that PLM-WA's trademark lacks secondary meaning.
2  PLM-WA's rebuttal expert thoroughly contradicts and rebuts this claim.

3        Mr. Wallace opines that Ms. Harper's survey is fatally flawed. He also points
4  out that it does not establish what PLM-OR claims—because even if a survey is
5  properly designed (which wasn't the case here), it is but one of many ways a
6  trademark owner can establish secondary meaning—something that both Ms. Harper
7  and PLM-OR ignore. *See Art Attacks Ink, LLC v. MGA Ent. Inc.*, 581 F.3d 1138, 1145
8  (9th Cir. 2009) (quoting *Filipino Yellow Pages, Inc. v. Asian Journal Publ'ns, Inc.,* 198
9  F.3d 1143, 1151 (9th Cir. 1999)); Ninth Circuit Jury Instructions Committee, Manual of
10 Model Civil Jury Instructions for the District Courts of the Ninth Circuit § 15.11
11 (March 2025) (collecting cases).

12       For example, Mr. Wallace criticizes the universe that Ms. Harper surveyed
13 because it does not reflect PLM-WA's target population, flaws in her control
14 question, her interpretation of open-ended responses, and the injection of a question
15 that is not needed to establish secondary meaning. As Ms. Harper herself recognizes,
16 because "even if the proper questions are asked in a proper manner, if the wrong
17 persons are asked, the results are likely to be irrelevant."[23] The errors that Mr.
18 Wallace exposes are normal for a rebuttal expert to raise, and support a common
19 sense, garbage-in-garbage-out logic why the jury should not give Ms. Harper's
20 survey any weight. *See* 5 McCarthy on Trademarks and Unfair Competition § 32:171
21 (5th ed. May 2025) (discussing common methodological deficiencies in trademark
22 surveys). If PLM-OR disagrees, it should address those issues not by attempting to
23 silence Mr. Wallace, but by cross-examining him. *Primiano*, 598 F.3d at 564 (even
24 "[s]haky but admissible evidence is to be attacked by cross examination, contrary
25 evidence, and attention to the burden of proof, not exclusion").

---

27 [23] Dkt. # 82-1, at p. 13 (¶ 37) (citing McCarthy on Trademarks and Unfair Competition, § 32:47-48 (1st ed. 1973).

PLAINTIFF'S RESPONSE TO        Page 8        Ellis | Li | McKinstry
DEFENDANT'S MOTION TO                                                                           1700 Seventh Avenue, Suite 1810
EXCLUDE EXPERT OPINIONS                                                                         Seattle, WA 98101-1820
                                                                                                              206.682.0565 Fax: 206.625.1052

1   Indeed, courts have roundly criticized Ms. Harper's work for some of the very
2   reasons that Mr. Wallace identifies. *See*, *e.g.*, *Saxon Glass Technologies, Inc. v. Apple,*
3   *Inc.*, 393 F.3d 270, 291 (W.D.N.Y. 2019) (noting that the "significance of the
4   methodological flaws" in Ms. Harper's survey render it of "little evidentiary value");
5   *La Potencia, LLC v. Chandler*, 733 F. Supp.3d 1238 (S.D. Fla. 2024) (finding Ms.
6   Harper's secondary meaning survey "unpersuasive" because the universe did not
7   include the relevant consumers); *Yellowfin Yachts, Inc. v. Barker Boatworks, LLC*, 237 F.
8   Supp.3d 1230 (M.D. Fla. 2017) (finding the small sample size, improper stimuli, and
9   other errors "fatally undermine the reliability of Harper's survey," concluding:
10  "*Daubert* requires the exclusion of the survey"); *Jacobs v. Fareportal, Inc.*, No. 8:17-cv-
11  362, 2020 WL 6587245, at *10 (D. Neb. May 29, 2020) ("The cumulative effect of all the
12  errors discussed above—errors in conception, of format, of methodology, of
13  consistency, and of proper scope—renders the Harper survey inadmissible");
14  *9 Square in the Air, LLC v. Mountainville Com., LLC*, No. 2:22-cv-00335-HCN-JCB, 2024
15  WL 2326688, at *4 (D. Utah May 22, 2024) ("Ms. Harper's New Report resulted from a
16  material error in the survey on which the Original Report was based. Such an
17  oversight on Ms. Harper's part amounts to negligence. . . .").
18  Because Mr. Wallace's opinions respond to and address basic flaws in Ms.
19  Harper's survey—and the predictably wrongful conclusion that PLM-OR draws from
20  it—they fit squarely within his expertise and the definition of rebuttal testimony. As
21  such, Mr. Wallace should be allowed to express the opinions stated in his report.

## IV.   CONCLUSION

23  Messrs. Beaton and Wallace are experts in their fields; both have testified
24  many times before; and both hold opinions that fit within the normal bounds of what
25  experts in their positions are allowed to testify. For these reasons, they should be
26  allowed to express their opinions at trial without the blatantly self-serving limitations
27  that PLM-OR requests.

DATED this July 7, 2025

ELLIS, LI & McKINSTRY PLLC

By:  *s/Nathaniel L. Taylor*
    Kyle D. Netterfield WSBA No. 27101
    Nathaniel L. Taylor WSBA No. 27174
    Payton C. Tompkins WSBA No. 61724
    1700 Seventh Avenue, Suite 1810
    Seattle, WA 98101-1820
    Telephone: (206) 682-0565
    Fax: (206) 625-1052
    Email: knetterfield@elmlaw.com
           ntaylor@elmlaw.com
           ptompkins@elmlaw.com

    I certify that this memorandum contains 2528 words, in compliance with the Local Civil Rules.

ATKINS INTELLECTUAL PROPERTY, PLLC

By:  *s/Michael G. Atkins*
    Michael G. Atkins WSBA No. 26026
    113 Cherry Street #18483
    Seattle, WA 98104-2205
    Telephone: (206) 628-0983
    Email: mike@atkinsip.com

    *Attorneys for Plaintiff Pacific Landscape Management, LLC*